IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINNE LEWIS SMITH,<br>    Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. PWG-13-3893 |
| SGT. E. WATKINS,<br>    Defendant. | * | |
| | ***** | |

## MEMORANDUM

Plaintiff Antoinne Lewis Smith brought this 42 U.S.C. § 1983 complaint against Sergeant Eric Watkins, *inter alios*, after an altercation between him and Watkins and two other officers, which Smith insists was unprovoked and a violation of his civil rights. Watkins moves for summary judgment, contending that the undisputed facts show that Smith failed to comply with his orders, including by turning to face him when directed to face the wall, such that Watkins' use of force was reasonable and Watkins is entitled to judgment as a matter of law. Because Plaintiff fails to provide evidentiary support for his position, and the evidence that Watkins produced, including a video of the incident, supports Watkins' position, I will grant Watkins' motion and enter summary judgment in his favor.

## I. BACKGROUND

On December 23, 2015, plaintiff Smith, a former inmate at the Montgomery County Correctional Facility ("MCCF"), filed a 42 U.S.C. § 1983 civil rights complaint against MCCF, Warden Robert Green and Sergeant Eric Watkins. Smith alleges in an unverified complaint that, prior to engaging in a pat down on December 9, 2013, he informed Watkins that he "did not want him to touch him" because he had filed charges against Watkins related to an alleged October 20,

2013 assault. Compl., ECF No. 1. He claims that Watkins then repeatedly punched him in his face and head and pulled his legs from under him, causing the left side of his face to hit the floor. In his supplemental complaint, which also is unverified, Smith alleges that Watkins punched him in the back of the head and pulled his legs from under him. Supp., ECF No. 8. He maintains that he was immediately taken to Shady Grove Hospital ("Shady Grove") where he was informed that he had a fractured skull and damage to his left ear drum. Smith claims that he remained at Shady Grove until December 13, 2013. He contends that the assault has "physically damaged [his] mind [and] movements," and he is no longer receiving the pain medication provided by the hospital. Compl.

On February 26, 2015, the Court entered a Memorandum and Order that granted the motion to dismiss filed by defendants MCCF and Green, which Smith had opposed, and granted Smith and defendant Watkins additional time to file motions for summary judgment. ECF Nos. 28 & 29. Defendant Watkins has filed a motion for summary judgment, ECF No. 31; accompanied by surveillance videos, Def.'s Mot. Ex. 2, ECF No. 31-2; excerpts from Smith's deposition, Def.'s Mot. Ex. 1, ECF No. 31-1; and the affidavits of Watkins and Corporals Rafiq Muhammad and Rayfield Foreman. Def.'s Mot. Ex. 3–5, ECF Nos. 31-3 – 31-5. Smith has filed an opposition to Watkins' motion for summary judgment, ECF No. 33, accompanied by a letter, Pl.'s Opp'n Ex. B, ECF No. 33-2; medical records, Pl.'s Opp'n Ex. E–H, ECF Nos. 33-5 – 33-8; and inmate request forms, Pl.'s Opp'n Ex. A, C, D, ECF Nos. 33-1, 33-3, 33-4. Watkins has filed a reply. ECF No. 34. The motion for summary judgment may be determined on the pleadings and shall be granted without oral hearing. *See* Local Rule 105.6 (D. Md. 2014).

## II. STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

In reviewing the evidence related to a motion for summary judgment, the court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court "view[s] the facts in the light

depicted by the videotape." *Id.* at 381. This means that when a videotape "clearly depict the events at issue, they will prevail over contrary evidence submitted by either side." *Glascoe v. Sowers,* No. ELH-11-2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013). But, if "the videos are unclear and ambiguous, the Court must adopt [the nonmovant's] version of events for purposes of the Motion [for Summary Judgment]." *Id.*

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott,* 550 U.S. at 378; *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and liberally construes Smith's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek,* 574 F.2d 1147, 1151 (4th Cir. 1978).

## III. DISCUSSION

According to Watkins, Smith arrived at MCCF in October, 2012 and was placed in the MCCF Male Special Management housing unit after an October 20, 2013 incident involving a correctional officer.[1] Def.'s Mot. 2. While in this unit, Smith was subject to "window wall checks" three times a day, on each shift. Smith Dep. 29: 3–18, 58:1–6. When performing these checks, two correctional officers would handcuff Smith through a slot in the door before opening the cell door and then turn him to face the door. *Id.* at 29:19– 30:10. One officer would remain behind Smith while the other officer would check the room for contraband or prohibited cell items. *Id.*

On December 9, 2013, Watkins and Corporal Muhammad came to Smith's cell to check it. Smith testified at his deposition that he was handcuffed from behind and then exited the cell. Smith Dep. 58:11–12. Smith indicated he did not want Watkins to pat him down because of the prior

---

[1] The alleged October 20, 2013 assault was the subject of litigation in *Smith v. Watkins,* Civil Action No. PWG-13-3177. On September 11, 2015, summary judgment was entered in favor of Watkins and against Smith.

4

October 2013 incident. *Id.* at 58:13–15. Smith testified that Watkins then said, "I'm not going through this shit tonight," and began hitting Smith in the head, pulled him off the ground, and caused the left side of his face to hit the ground. *Id.* at 58:15–18, 60:12–16. Smith testified that Muhammad did not take any action and "was standing like he could not believe [what] was going on." *Id.* at 60:1–2. According to his deposition transcript, Smith indicated that Watkins tried to "hog-tie" him with a pair of handcuffs on his legs, but Smith prevented him from doing so by kicking his feet. *Id.* at 61:3–4, 14–15. He could not state whether or not he kicked Watkins. *Id.* at 74:6–12.

In his Affidavit, Muhammad states that on December 9, 2013, he and Corporal Foreman were assigned to provide "window wall checks," during which time the inmates are to stand facing the wall outside their cell while the officer conducts "a quick check of the windows and walls of the cells for any signs of tampering." Muhammad Aff. ¶¶ 3–4. He affirms that on that day they were accompanied by Watkins. *Id.*

Muhammad affirms that the Male Special Management unit houses inmates who are "segregated from the general population for various reasons" and those inmates are "only allowed out of their cells in handcuffs." *Id.* ¶ 5. He maintains that he "unlocked the slot to Smith's cell and handcuffed him through th[e] slot. . . . and asked the officer at the control panel to open Inmate Smith's cell door." *Id.* ¶ 6. Muhammad states that "Smith came out of his cell and stood by the wall," and he went into Smith's cell to conduct the window wall check. *Id.* ¶ 7. He affirms that while conducting the cell check, he "heard a commotion, and heard Sergeant Watkins ordering Inmate Smith to 'get on the wall.'" *Id.* ¶ 8. Muhammad maintains that he "came back to the cell entrance to help gain control of Inmate Smith," who was blocking Muhammad's exit from the cell. *Id.* ¶ 9. He contends that "Watkins was ordering Inmate Smith to get on the wall, and was

5

attempting to pull Inmate Smith away from the cell entrance." *Id.* Muhammad affirms that he and Watkins ordered Smith "to get on the ground," but Smith did not comply. *Id.* ¶ 10. He maintains that Smith is "large in size" and "difficult to control." *Id.* ¶ 12. He acknowledges that he "pulled on one or both of Inmate Smith's legs" in an attempt to get him down on the ground. *Id.* ¶ 14–15.

Corporal Foreman and Muhammad affirm that it is MCCF policy to get non-compliant inmates down on the ground. *Id.* ¶ 13; Foreman Aff. ¶ 12. They maintain that they were faced with an inmate refusing the direct orders of a Sergeant and two officers and the need to get him to the ground. Muhammad Aff. ¶¶ 11–14; Foreman Aff. ¶¶ 8–12. Corporal Foreman echoes Muhammad's asseverations, and indicates that after "Sergeant Watkins ordered Inmate Smith to stop resisting, and Inmate Smith did not comply[,] Inmate Smith yelled something like 'take your hands off me.'" Foreman Aff. ¶ 8. Foreman maintains that he "stepped in to help get control of Inmate Smith, and ended up holding Inmate Smith . . . on his right shoulder or arm." *Id.* ¶ 9. He affirms that Smith continued to struggle with the officers and refused to obey direct orders, resulting in an attempt to "take him to the ground." *Id.* ¶¶ 11–12. Foreman states that as Smith went down, he "observed his head hit the open slot on his cell door." *Id.* ¶ 13.

In his Affidavit, Watkins claims that on the date in question at approximately 11:40 p.m. he entered the Male Special Management Unit to assist Muhammad and Foreman in conducting window and wall cell checks. Watkins Aff. ¶ 3. He affirms that as he was conducting a frisk search of Smith, Smith "proceeded to kick his leg back towards [Watkins]" and "turned his body towards [him] and began coming off the wall." *Id.* ¶ 7. Smith disobeyed direct orders to remain facing towards the wall during the window wall check and pat down and "began struggling with [Watkins] by twisting his body toward [Watkins] and trying to head butt [him] in [his] facial area." *Id.* ¶ 8.

6

Watkins states that, "[i]n response, [he] applied a pressure point technique with [his] left hand to the right side of Inmate Smith's neck/facial area." *Id.* He states that, because Muhammad still was in Smith's cell, he could not move Smith back into his cell and "had to move him from the door area so that corporal Muhammad could leave the cell." *Id.* ¶ 9. Watkins maintains that Smith continued to resist the three officers and pulled Muhammad and Foreman along with him while walking away from Watkins toward the stairwell. *Id.* ¶¶ 9–10. He claims that he shouted to the officers that they all should try to take Smith to the ground to gain control of him. *Id.* ¶ 12. Watkins affirms that he "did not pull out or otherwise touch [Smith's] leg to take him to the ground." *Id.* ¶ 13.

Watkins contends that he "was faced with an inmate" on the Male Special Management Unit "who was disregarding direct orders [to stay facing the wall] and facing toward him" and struggling with officers. Def.'s Mot. 9–10. He maintains that he only employed reasonable force in a good faith effort to restore order and discipline. *Id.* at 12. He argues that the evidence does not support Smith's claims that Watkins repeatedly punched him in the face and head. *Id.* at 11.

A video of the incident taken by MCCF security cameras depicts three officers, Watkins, Muhammad and Foreman,[2] entering the Special Management Housing unit to perform the window wall checks at 11:33 p.m. on the night in question. The video is not very clear, but it shows Muhammad, wearing a hat, squatting before a cell door. According to Watkins, Muhammad was handcuffing Smith through the slot in the door. The cell door is opened and Smith exits the cell and turns to face the wall while Muhammad enters the cell. Watkins begins to pat Smith down and Smith pulls away, turns to face Watkins and enters the doorway of his cell, with Muhammad still in the cell. Watkins places his hands on Smith's shoulder and all three officers begin to struggle with

---

[2] Watkins identifies each officer in his narrative of the video. Def.'s Mot. 4. I accept his

Smith, resulting in Foreman and Muhammad holding his arms while Watkins calls in a report on the radio. The three officers then attempt to move Smith back into his cell, with Watkins placing his hand behind Smith's head. Smith pushes back against the officers and after a few moments, Muhammad reaches down and pulls Smith's leg out, bringing him to the ground. No more than forty seconds elapses from Smith's cuffing to his being pulled to the ground. The video shows that Smith remained held on the ground for several minutes until medical assistance arrived.

In his unverified opposition, Smith states he was subject to physical assaults by Watkins occurring on October 20, 2013, and December 9, 2013. He states that after the second assault in December (which is the subject of this suit) he was hospitalized with "a fractured skull[] and busted ear drum." Pl.'s Opp'n 1. Smith claims that Watkins abused his authority and that Smith did not "do anything to receive the punishment [he] received on the night of December 9, 2013 . . . ." *Id.* at 3. He insists that he "never faced the Defendant." *Id.* at 2. Accompanying his opposition are Smith's inmate grievance, request form, and copies of a contemporaneous consultation report and computed tomography from Shady Grove. The documents reveal that Plaintiff suffered "a small amount of ecchymosis [subcutaneous spot of bleeding] behind the left ear" but no "fractures of the facial skeleton or skull base." *Id.* Ex. E.

There is no dispute that as of the date of the incident in question, Smith had been convicted of second-degree assault. *See State v. Smith*, Case No. 0D00281372 (District Court of Montgomery County). Therefore, his excessive force claim shall be evaluated under the Eighth Amendment. It is well-settled that the Eighth Amendment's prohibition against "cruel and unusual punishment" prohibits prison officials from inflicting pain unnecessarily and wantonly against prisoners. *Whitley*

---

identifications, which Plaintiff does not challenge, for purposes of this narrative.

*v. Albers,* 475 U.S. 312, 319 (1986).

An inmate's Eighth Amendment claim involves a subjective component and an objective component. *See Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008). Specifically, the court must decide "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). Where, as here, a prisoner makes an excessive force claim, the court's subjective component analysis "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (citations omitted); *see also Williams,* 77 F.3d at 761.

The application of the Eighth Amendment's cruel and unusual punishment provision to claims of excessive force is extremely fact specific. *Dukes v. Troy Hous. Auth.,* No. 08-CV-479, 2011 WL 1261317, at *7 (N.D. N.Y. Mar. 31, 2011). This Court ultimately must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley,* 475 U.S. at 321.

The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy,* 559 U.S. 34, 36-39 (2010). It is "the nature of the force" used by the correctional officer, "rather than the extent of the [prison inmate's] injury," that is "the relevant inquiry" in an Eighth Amendment claim. *Hill v. Crum,* 727 F.3d 312, 321 (4th Cir. 2013). "'[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have

been thought necessary" in a particular situation,' " but if force is applied "'maliciously and sadistically,'" liability is not avoided simply because the prisoner "had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 37–38 (quoting *Hudson*, 503 U.S. at 9). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action" for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment, however. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights (citation omitted)).

Smith alleges that he sustained a skull fracture and ear injury. Yet, no evidence has been provided showing that he sustained a skull fracture. Indeed, the medical report that Smith himself provided affirmatively states that Smith did not sustain "any fractures of the facial skeleton or skull base." Pl.'s Opp'n Ex. E. Watkins does not dispute that Smith experienced an injury to his ear arising out of the incident and was transported to Shady Grove. He maintains that Smith hit his ear on the food slot door as he was taken to the ground. The video is not very clear, but it does show that it was Muhammad, not Watkins, who pulled Smith's leg to bring him to the ground, and there is no footage in which Smith clearly is being punched in the head.

Smith has been challenged to come forward with verified materials to oppose Watkins's exhibits, including the video, in support of his own claims that Watkins maliciously applied force. He has failed to do so. The evidence provided is illustrative of Smith failing to comply with the

officers' direct orders to submit to a search and to get against the wall and an all-too-brief struggle with the officers as they attempted to get Smith to the ground. The video excerpts directly involving Smith and Watkins are not open to more than one interpretation. Smith must demonstrate that Watkins did not use force in a good-faith effort to maintain or restore discipline, but rather applied it maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010); *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013). He has not done so.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment shall be granted.[3] Judgment shall be entered in favor of Watkins and against Smith. A separate Order shall be entered reflecting the rulings entered in this decision.

Date: November 19th, 2015

Paul W. Grimm
United States District Judge

---

[3] In light of the absence of a constitutional deprivation, there is no need to address Defendant's qualified immunity argument.

11